**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF TEXAS**
**SHERMAN DIVISION**

| | | |
|---|---|---|
| MICHAEL LEE, | § | |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | CIVIL ACTION NO. 4:14-CV-418-CAN |
| v. | § | |
| | § | |
| CAROLYN W. COLVIN, | § | |
| COMMISSIONER OF SOCIAL | § | |
| SECURITYADMINISTRATION, | § | |
| | § | |
| | § | |
| Defendant. | § | |
| | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this appeal under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner denying his claim for disability insurance benefits. After reviewing the Briefs submitted by the Parties, as well as the evidence contained in the administrative record, the Court finds that the Commissioner's decision should be **REMANDED**.

## BACKGROUND

### I.    PROCEDURAL HISTORY OF THE CASE

Plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act on November 5, 2010, alleging disability beginning on September 27, 2009, due to lumbar disc disease, depression, anxiety, and personality disorder [TR 125]. Plaintiff's application was initially denied by notice on April 5, 2011, and again upon reconsideration on June 8, 2011. *Id.* at 81, 87. On January 6, 2012, Plaintiff timely requested a hearing before an Administrative Law Judge ("ALJ"), and a hearing was held in Dallas, Texas on

October 16, 2012. *Id*. at 54, 92. Plaintiff, represented by counsel, testified at the hearing, and vocational expert, Sugi Komarov ("Ms. Komarov") also testified at the hearing. *Id*. at 54, 56. On November 20, 2012, the ALJ issued his decision denying benefits and found Plaintiff not disabled at step five of the sequential evaluation process (discussed *infra*). *Id*. at 42-49. On January 22, 2013, Plaintiff sought review before the Appeals Council, and in conjunction with his request for review, Plaintiff submitted new evidence from Dr. John C. Milani, M.D. ("Dr. Milani") and Dr. Paulette Pitt, Ph.D. ("Dr. Pitt"). *Id*. at 37. The Appeals Council denied review on April 25, 2015, concluding the evidence "[did] not provide a basis for changing the Administrative Law Judge's decision," making the decision of the ALJ the final decision of the Commissioner. *Id*. at 1-2.

On June 23, 2014, Plaintiff filed his Complaint in this Court [Dkt. 1]. Plaintiff filed his Brief on November 13, 2014 [Dkt. 13], and the Commissioner filed her Brief in Support of the Commissioner's Decision on January 12, 2015 [Dkt. 14]. On January 14, 2015, the Administrative Record was received from the Social Security Administration ("SSA") [Dkt. 15]. On January 23, 2015, Plaintiff filed his Reply [Dkt. 17], and on June 23, 2015, this case was assigned to the undersigned by consent of all Parties for further proceedings and entry of judgment [Dkt. 19].

## II.    STATEMENT OF RELEVANT FACTS

### 1.    *Age, Education, and Work Experience*

Plaintiff was born on November 13, 1970, and was forty-two years of age as of the date of the ALJ's decision. *Id*. at 128. At all relevant times, Plaintiff was classified as a "younger person" [Dkt. #13 at 3]. 20 C.F.R. § 404.1563(c). Plaintiff has a high school education and past relevant work experience as a truck driver and hand packager. *Id*. at 48, 72, 141.

## 2. Medical Record Evidence

Plaintiff's medical records demonstrate that he presented to Riverview Medical Center on September 29, 2009, after injuring his back while picking up a generator [TR 338]. At that time, Plaintiff was placed on restrictive work duty, limiting him to lifting no more than ten pounds and advising him to avoid driving. *Id.* at 345. Plaintiff continued to report pain and limitations during activities of daily living, but pursued pain management and physical therapy regimens as prescribed by his physicians. *Id.* at 233, 235, 237, 262, 264. Plaintiff underwent back surgery in July 2010, and later reported that his symptoms of pain and limitations worsened after surgery. *Id.* at 304. Plaintiff also reported significant psychological symptoms occurring as a result of his September 2009 accident; specifically, Plaintiff reported depression and anxiety due to his poor physical health and stressors such as difficulty paying his bills and concern for his son. *Id.* at 308-09. A review of the record suggests Plaintiff suffers from lumbar disc disease, depression, anxiety, and personality disorder.

### a. New Evidence from Dr. Milani

Following the hearing and an unfavorable decision by the ALJ, Plaintiff submitted additional evidence to the Appeals Council, including additional medical records from his treating and examining physician, Dr. Milani [Dkt. 13 at 10].[1] *Id.* at 517-583. Plaintiff's new medical records from Dr. Milani span a time period from approximately July 27, 2011, through November 20, 2012; the ALJ had no opportunity to consider the records at hearing, since such records were not provided to the ALJ prior to his decision [Dkt. 13 at 16; TR 194]. Plaintiff was unsuccessful in obtaining such records prior to the ALJ's hearing date, and argues that his prior

---

[1] Prior to the ALJ's decision, Plaintiff did submit some of Dr. Milani's medical records pertaining to the relevant time frame, and the ALJ did have those records to consider in reaching his decision [TR 216-220].

attorney timely requested Dr. Milani's additional records prior to the ALJ hearing on numerous occasions to no avail [Dkt. 13 at 5; Dkt. 17 at 2].

The additional records reflect that, on July 27, 2011, Dr. Milani noted that Plaintiff continued to have lower back pain with minimal relief from physical therapy, a limited range of motion, and mildly antalgic gait. *Id.* at 521. Dr. Milani diagnosed Plaintiff with lumbar region disc disorder and prescribed Norco and Xanax, and suggested Plaintiff abstain from work for one month. *Id.* at 521-523. Plaintiff returned to see Dr. Milani on October 19, 2011, where Dr. Milani found Plaintiff was unable to work, and would not be expected to recover until November 19, 2011. *Id.* at 526. By November 30, 2011, Plaintiff reported back injections afforded him only temporary relief, and Dr. Milani noted moderately limited range of motion with paralumbar tenderness. *Id.* at 530. Dr. Milani expected Plaintiff to be unable to return to work until January 30, 2012. *Id.* at 532. Dr. Milani's reports also include a December 19, 2011 Functional Capacity Evaluation, which reveals Plaintiff's physical demand level fell in the "below sedentary" category. *Id.* at 534.

Dr. Milani's records also reveal that on February 24, 2012, Dr. Howard M. Cohen, M.D. ("Dr. Cohen") reported that Plaintiff experienced severe, persistent depression characterized by difficulty with memory and concentration with improvement from Lexapro, although his depression remained "significant." *Id.* at 538. Dr. Cohen's impression was chronic postoperative lumbar pain, chronic pain syndrome with depression and panic, alcohol abuse in remission, Attention Deficit Disorder, and nicotine dependence. *Id.* at 539. Plaintiff returned to Dr. Milani, and on May 23, 2012, underwent a second Functional Capacity Evaluation, in which his physical demand level had improved to the "medium" level. *Id.* at 545.

On July 31, 2012, Plaintiff was referred by Dr. Milani for a psychological examination to determine his suitability to return to work. *Id*. at 567. Examining psychologist, Claudia Ramirez, Psy.D. ("Dr. Ramirez"), noted that Plaintiff's responses appeared to suggest a probability of a substance dependence disorder, and "[h]is mood was anxious while his affect was constricted." *Id*. at 569. Dr. Ramirez diagnosed Plaintiff with pain disorder associated with psychological factors, panic disorder, major depressive disorder, and a Global Assessment of Functioning ("GAF") score of 50.[2] *Id*. at 570. Plaintiff underwent a second psychological evaluation administered by Tommy Overman, Ed.D. ("Dr. Overman"), who diagnosed Plaintiff with pain disorder associated with psychological factors and a GAF of 59.[3] *Id*. at 571-574.

### b. *New Evidence from Dr. Pitt*

Plaintiff also submitted to the Appeals Council new evidence from Plaintiff's treating and examining physician Dr. Pitt, to whom Plaintiff was referred by Dr. Milani pursuant to Dr. Milani's concerns about Plaintiff's allegations of paranoia, severe back pain, lack of libido, constant anxiety, and inability to concentrate [TR 13-29]. Dr. Pitt conducted her psychological evaluation on January 25, 2013 (after the ALJ's November 20, 2012 decision denying disability had already been issued), and submitted a seventeen-page report discussing her testing, findings, and diagnoses. *Id*. Dr. Pitt found that Plaintiff's attention span was short, he was "highly distractible," and "had a difficult time staying on task." *Id*. at 16. Plaintiff's mood appeared highly variable with intrusive crying, and Dr. Pitt noted the interview was punctuated with occasional panic attacks in which he displayed slow motor movements and appeared to take time

---

[2] GAF is a standard measurement of an individual's overall functioning level "with respect only to psychological, social, and occupational functioning." *Boyd v. Apfel*, 239 F.3d 698, 700 n.2 (5th Cir. 2001) (citing AMERICAN PSYCHIATRIC ASS'N DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 32 (4th ed. 1994) (DSM-IV)). A GAF of 41 to 50 corresponds to "serious symptoms" or "any serious impairment in social, occupational, or school functioning." *Id*. at 702.
[3] A GAF score of 51 to 60 corresponds with "moderate symptoms (e.g. flat affect and circumstantial speech, occasional panic attacks) or any moderate difficulty in social, occupational, or school function (e.g., few friends, conflicts with peers or co-workers)." *Boyd*, 239 F.3d at 700.

to regain his concentration. *Id*. Based on Plaintiff's testing results, Dr. Pitt diagnosed Plaintiff with mild cognitive impairment, generalized anxiety disorder, panic disorder, major depressive disorder, pain disorder, and a GAF of 35.[4] *Id*. at 27. Dr. Pitt also completed an examining physician's statement in which she reported marked limitations in understanding, remembering, and carrying out detailed instructions and in making judgments on simple work-related decisions. *Id*. at 9. Dr. Pitt reported "extreme" limitations in interacting appropriately with coworkers, supervisors, and the public, as well as completing a normal workday and workweek without interruptions from psychologically based symptoms. *Id*. Dr. Pitt also noted, by checking a box labeled "yes," that Plaintiff's limitations could reasonably have been inferred to have been present since September 27, 2009. *Id*. at 11.

### 3. Hearing Testimony

#### a. Plaintiff's Testimony

Plaintiff testified that he injured his back while lifting a generator in September 2009, and was subsequently unable to work. *Id*. at 59. Plaintiff testified that his injuries extend from his lower back all the way down his left leg and toes. *Id*. Plaintiff testified that he had surgery in July 2010, and following this surgery his lower back pain worsened. *Id*. at 60-61. He further testified that he currently spends approximately five or six hours in his recliner each day. *Id*. at 63. Plaintiff testified that he is unable to do grocery shopping, has difficulty driving long distances, cannot bend over, and requires assistance with cleaning his house. *Id*. at 68-70.

---

[4] A GAF score of 31 to 40 indicates "some impairment in reality testing or communication" or "major impairment in several areas, such as work, or school, family relations, judgment, thinking, or mood." *Boyd*, 239 F.3d at 702 (citing AMERICAN PSYCHIATRIC ASS'N DISAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS at 34 (4th ed. 1994) (DSM-IV)).

At the hearing, Ms. Komarov testified as a vocational expert. *Id*. at 72. The ALJ asked Ms. Komarov to describe Plaintiff's work history, which she classified into two categories: (1) truck driver (which is medium work with an Specific Vocational Preparation ("SVP")[5] of 4); and (2) hand packager (which is medium work with an SVP of 2). *Id*. The ALJ then asked Ms. Komarov a hypothetical question that incorporated Plaintiff's age, work history, and education, as well as the additional limitations of lifting up to ten pounds occasionally, less than ten pounds frequently, and only being able to sit for six hours out of an eight hour day. *Id*. The hypothetical question also included the limitations of standing and walking at least two hours out of an eight hour day, and the need for a sit/stand option at thirty minute intervals. *Id*. at 72-73. The ALJ included additional limitations of no climbing ladders, ropes, or scaffolds, and avoiding exposure to unprotected heights, fast moving machinery, sharp objects, open flames, extreme temperatures, and concentrated vibrations, only occasional postural functions such as climbing ramps and stairs, balancing, stooping, kneeling, crawling, or crouching. *Id*. Finally, the ALJ limited the hypothetical individual to no complex instructions, no more than occasional contact with supervisors, co-workers or the public. *Id*. at 73. The ALJ then asked Ms. Komarov if there were other jobs in the regional or national economy that a person with this profile could perform, and Ms. Komarov replied that there was only one such job. *Id*. Ms. Komarov testified that the single position to meet the limitations prescribed by the ALJ was surveillance system monitor, which is a sedentary position with an SVP of 2. *Id*. Ms. Komarov stated that surveillance

---

[5] "SVP" refers to the "specific vocational preparation" level which is defined in the Dictionary of Occupational Titles ("DOT") as "the amount of lapsed time required by a typical worker to learn the techniques, acquire the information, and develop the facility needed for average performance in a specific job-worker situation." DOT, Appendix C, page 1009 (4th ed. 1991). Using the skill level definitions in 20 C.F.R. 404.1568 and 416.968, unskilled work corresponds to an SVP of 1-2; semi-skilled work corresponds to an SVP of 3-4; and skilled work corresponds to an SVP of 5-9 in the DOT. Social Security Ruling ("SSR") 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000).

system monitor was the only occupation available to the hypothetical individual with the described limitations due to the sit/stand limitation combined with the limitation of no more than occasional contact with the public, co-workers, and supervisors. *Id*. at 73-74. Ms. Komarov further testified that if the hypothetical individual had the other or additional physical limitations described by Plaintiff during the hearing, that hypothetical person would not be able to perform the job of surveillance system monitor. *Id*. at 74.

## III. FINDINGS OF THE ALJ

### 1. *Sequential Evaluation Process*

Pursuant to the statutory provisions governing disability determinations, the Commissioner has promulgated regulations that establish a five-step process to determine whether a claimant suffers from a disability. 20 C.F.R. § 404.1520. First, a claimant who is engaged in substantial gainful employment at the time of his disability claim is not disabled. 20 C.F.R. § 404.1520(b). Second, the claimant is not disabled if his alleged impairment is not severe, without consideration of his residual functional capacity, age, education, or work experience. 20 C.F.R. § 404.1520(c). Third, if the alleged impairment is severe, the claimant is considered disabled if his impairment corresponds to a listed impairment in 20 C.F.R., Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(d). Fourth, a claimant with a severe impairment that does not correspond to a listed impairment is not considered to be disabled if he is capable of performing his past work. 20 C.F.R. § 404.1520(e). Finally, a claimant who cannot return to his past work is not disabled if he has the residual functional capacity to engage in work available in the national economy. 20 C.F.R. § 404.1520(f). Under the first four steps of the analysis, the burden lies with the claimant to prove disability and at the last step the burden shifts to the

Commissioner. *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995). If at any step the Commissioner finds that the claimant is or is not disabled, the inquiry terminates. *Id.*

### 2. ALJ's Disability Determination

After the prescribed five-step sequential analysis, the ALJ denied Plaintiff's request for benefits on November 20, 2012 [TR 42-49]. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since September 27, 2009, the alleged onset date. *Id.* at 44. At step two, the ALJ found that Plaintiff has the severe impairments of lumbar disc disease, depression, anxiety, and personality disorder. *Id.* However, at step three, the ALJ found that these impairments, or combination of impairments, did not meet or medically equal the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. *Id.* At step four, the ALJ found that Plaintiff has the residual functional capacity to perform a wide range of sedentary work as defined in 20 C.F.R. § 404.1567(a). *Id.* at 45. More specifically, the ALJ found that Plaintiff can lift ten pounds occasionally and less than ten pounds frequently, sit for six hours, and stand/walk for two hours of an eight-hour workday. *Id.* The ALJ also limited Plaintiff to no climbing ladders, ropes, or scaffolds; occasional climbing ramps/stairs, balancing, stooping, kneeling, crouching, and crawling; and no exposure to vibration, hazardous machinery, sharp objects, open flames, temperature extremes, and unprotected heights. *Id.* Plaintiff was also limited to no complex instructions and only occasional contact with supervisors, co-workers, and the public. *Id.* Continuing the step four analysis, the ALJ then determined that Plaintiff is unable to perform any past relevant work. *Id.* at 48. Notwithstanding, at step five, the ALJ found that Plaintiff could perform other work that exists in significant numbers in the national economy, specifically a "surveillance monitor." *Id.* at 49. Accordingly, the ALJ concluded Plaintiff was not disabled from September 27, 2009, through November 20, 2012.

## STANDARD OF REVIEW

In an appeal under § 405(g), this Court must review the Commissioner's decision to determine whether there is substantial evidence in the record to support the Commissioner's factual findings and whether the Commissioner applied the proper legal standards in evaluating the evidence. *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994); 42 U.S.C. § 405(g). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Cook v. Heckler*, 750 F.2d 391, 392 (5th Cir. 1985); *Jones v. Heckler*, 702 F. 2d 616, 620 (5th Cir. 1983). This Court cannot reweigh the evidence or substitute its judgment for that of the Commissioner. *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1995). Additionally, any conflicts in the evidence, including the medical evidence, are resolved by the ALJ, not the reviewing court. *Carry v. Heckler*, 750 F.2d 479, 484 (5th Cir. 1985).

The legal standard for determining disability under Titles II and XVI of the Act is whether the claimant is unable to perform substantial gainful activity for at least twelve months because of a medically determinable impairment. 42 U.S.C. §§ 423(d), 1382c(a)(3)(A); *see also Cook*, 750 F.2d at 393. "Substantial gainful activity" is determined by a five-step sequential evaluation process, as described above. 20 C.F.R. § 404.1520(a)(4).

## ANALYSIS

On appeal, Plaintiff asserts a single issue: he argues that Defendant's final disability determination is not supported by substantial evidence because new evidence was submitted to the Appeals Council that contradicts the ALJ's findings [Dkt. 13 at 15-16]. The ALJ issued a decision on November 12, 2012 [TR 42-49], and Plaintiff submitted new evidence on January 22, 2013. *Id*. at 194. The new evidence consists of records from treating and examining physicians Drs. Milani and Pitt, which Plaintiff alleges demonstrate Plaintiff's psychological

limitations are much more severe than those included by the ALJ in his residual functional capacity finding. *Id.* at 13-29, 517-583. Plaintiff argues that the new evidence merits review because it is both "new" and "material," and "undermines the decision" of the ALJ such that the ALJ's decision is not supported by substantial evidence [Dkt. 13 at 18]. In Response, the Commissioner argues that Plaintiff failed to demonstrate good cause for the submission of the new evidence, and that such evidence does not meet the materiality requirement because Plaintiff cannot show that the evidence has a reasonable probability of changing the outcome of the case [Dkt. 14 at 5-6]. The Commissioner further contends that the new evidence is not sufficiently supported by clinical and/or laboratory findings, and cannot alter the ALJ's well-reasoned decision. *Id.* at 8. Moreover, the Commissioner argues that the Court need not remand the case solely because the Appeals Council did not sufficiently consider the evidence and/or write a detailed analysis of its consideration of the evidence. *Id.* at 9-10.

In the instant case, the Appeals Council accepted and acknowledged receipt of the new evidence, but determined not to alter the ALJ's decision [TR 2]. Specifically, the Appeals Council stated that it considered the additional evidence and whether the ALJ's findings and/or conclusions were contrary to the weight of the evidence of record. *Id.* The Appeals Council further stated, as follows:

> We also looked at the information you submitted from Applied Psychology Group of Texoma date January 25, 2013 (18 pages) and Paulette Pitt, Ph.D. dated March 6, 2013 (4 pages). However, the Administrative Law Judge decided your case through December 31, 2012, the date you were last insured for disability benefits. This new information is about a later time and therefore, it does not affect the decision about whether you were disabled at the time you were last insured for disability benefits.

*Id.* Thus, the Appeals Council denied Plaintiff's request for review of the ALJ's decision. *Id.*

Under the Social Security Act, courts may review the final decision of the Commissioner. 42 U.S.C. § 405(g). The final decision encompasses the Appeals Council's denial of review, as well as new evidence submitted to the Appeals Council. *Williams v. Astrue*, No. 4:11-cv-483, 2013 WL 1282517, at *3 (E.D. Tex. Mar. 27, 2013) (citing *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005)). The Social Security regulations permit claimants to submit new evidence to the Appeals Council when requesting review of the ALJ's decision. 20 C.F.R. §§ 404.970(b), 404.976(b)(1); *see Rodriguez v. Barnhart*, 252 F. Supp. 2d 329, 331, 335 (N.D. Tex. 2003). The Appeals Council considers all evidence in the record, as well as any new and material evidence it receives which relates to the period on or before the date of the ALJ's decision, in deciding whether to grant a claimant's request for review. 20 C.F.R. § 404.976(b); *see also Williams*, 2013 WL 1282517, at *3 (citing *Rodriguez*, 252 F. Supp. 2d at 336). When reviewing new evidence, the Appeals Council must follow the same rules as the ALJ (specifically, those pertaining to the weight to be given to such opinions). 20 C.F.R. § 404.1527(e); *Williams*, 2013 WL 1282517, at *3.

## I.    GOOD CAUSE

The Parties disagree on what standard is required to justify remand in a case where new evidence is submitted to the Appeals Council. The Commissioner contends that under 42 U.S.C. § 405(g), the Court may remand a Social Security case only "upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding" [Dkt. 14 at 5 (citing *Haywood v. Sullivan*, 888 F.2d 1463, 1471 (5th Cir. 1989)]. To the contrary, Plaintiff argues that he need not show good cause for failing to submit the evidence earlier [Dkt. 17 at 2].

The Fifth Circuit has not yet considered this issue, and the remaining Circuit courts are split. *See Rodriguez*, 252 F. Supp. 2d at 33 (citing *Masterson v. Barnhart*, 309 F.3d 267, 274 n.3 (5th Cir. 2002) (reserving for another time the issue of "whether new evidence presented to the Appeals Council but not presented to the ALJ is part of the record for the district court to review" and whether good cause is required for the submission of such evidence)).[6] This Court, as well as other district courts in Texas, have concluded that a district court should indeed consider new evidence submitted by a plaintiff to the Appeals Council as part of the record on review and that good cause is not required for the submission of such evidence to the Appeals Council, pursuant to the reasoning discussed in further detail *infra*, *See Rodriguez*, 252 F. Supp. 2d at 333-34; *Schaff v. Colvin*, No. 3:13-CV-304-BF, 2014 WL 1462153, at *4 (N.D. Tex. Apr. 15, 2014); *Williams*, 2013 WL 1282517, at *3.

The Social Security regulations provide "[i]f new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the [ALJ] hearing decision," and that "[t]he Appeals council shall evaluate the entire record including the new and material evidence submitted." 20 C.F.R. § 404.970(b); *see also* 20 C.F.R. § 404.976(b)(1). Thus, courts considering this issue have found that the "final decision" necessarily includes the Appeals Council's conclusion that the ALJ's findings remained correct despite the new evidence, because (1) the regulations allow a claimant to submit additional evidence to the Appeals Council; (2) the regulations seem to make the new

---

[6] The Courts of Appeal for the Second, Fourth, Eighth, Ninth, and Tenth circuits have held that a district court should consider new evidence submitted to the Appeals Council in its review of the ALJ's final decision. *See Perez v. Chater*, 77 F.3d 41 (2d Cir. 1996); *O'Dell v. Shalala*, 44 F.3d 855 (10th Cir. 1994); *Riley v. Shalala*, 18 F.3d 619 (8th Cir. 1994); *Ramirez v. Shalala*, 8 F.3d 1449 (9th Cir. 1993); *Nelson v. Sullivan*, 966 F.2d 363 (8th Cir. 1992); *Wilkins v. Secretary of Dep't of Health and Human Svcs.*, 953 F.2d 93 (4th Cir. 1991). In contrast, the Third, Sixth, Seventh, and Eleventh Circuits have held that a district court should not review as part of the record new evidence presented to the Appeals Council when it has denied review of the ALJ's decision. *See Matthew v. Apfel*, 239 F.3d 589 (3d Cir. 2001); *Falge v. Apfel*, 150 F.3d 1320 (11th Cir. 1998); *Cline v. Commissioner*, 96 F.3d 146 (6th Cir. 1996); *Eads v. Secretary of Dep't of Health and Human Svcs.*, 983 F.2d 815 (7th Cir. 1993).

evidence part of the record; and (3) the Commissioner's decision does not become final until after the Appeals Council denies review or issues its own findings. *Rodriguez*, 252 F. Supp. 2d at 333 (citations omitted). Accordingly, various courts have concluded, and this Court agrees, that the Social Security regulations, "expressly authorize[] a claimant to present new evidence to the Appeals Council without a 'good cause requirement.'" *Rodriguez,* 252 F. Supp. 2d at 333; *Schaff,* 2014 WL 1462153, at *4.

The cases cited by the Commissioner in support of its contrary argument are misplaced [*see* Dkt. 14 at 5 (citing *Haywood*, 888 F.2d at 1471]. *See also Leggett v. Chater*, 67 F.3d 558, 563-64 (5th Cir. 1995). In each of these cases, the Court found "good cause" required for the submission of new evidence to the ***district court***; not to ***the Appeals Council***. *Id*.; *see also Schaff,* 2014 WL 1462153, at *4 (finding that plaintiff's failure to show "good cause" for the submission of evidence to the Appeals Council invalid because such requirement pertains only to consideration of new evidence submitted to the district court) (emphasis added). Accordingly, "[t]he Court believes the statute [42 U.S.C. § 405(g)] and regulations, when read in conjunction with one another, require the ***Appeals Council*** to consider evidence presented to it for the first time when the evidence is new and material… [and in] contrast, the ***district court*** may consider evidence presented to it for the first time when the evidence is new and material and good cause is shown for not presenting it in an earlier proceeding" (*i.e.* to the ALJ and/or Appeals Council). *Rodriguez*, 252 F. Supp. 2d at 336 (citations omitted) (emphasis added).

For this reason, the question now before the Court is whether the new evidence from Drs. Milani and Pitt submitted by Plaintiff to the Appeals Council was new and material – Plaintiff need not demonstrate good cause for the failure to submit such evidence earlier at the

ALJ hearing. *Id*.; 20 C.F.R. §§ 404.970(b), 404.976(b)(1). The Court accordingly considers the new evidence related to Drs. Milani and Pitt separately herein.

## II.     DR. PITT

The new evidence submitted by Plaintiff to the Appeals Council includes evidence from Dr. Pitt, consisting of a January 25, 2013 psychological evaluation [TR 13-29]. First, the Court must consider whether Dr. Pitt's evidence is "new." *Rodriguez*, 252 F. Supp. 2d at 336. Dr. Pitt's evaluation was conducted on January 25, 2013, and thus is certainly new, as it could not have been submitted to the ALJ.[7] The Court must also determine materiality; comprised within that analysis is: (1) whether the evidence relates to the period for which disability benefits were denied; and (2) whether there is a reasonable probability that the new evidence would change the outcome of the case. *Rudd v. Commissioner*, No. 4:14-CV-104, Dkt. 17, at *14 (E.D. Tex. September 2, 2015) (citing *Nehlig*, 40 F. Supp. 2d at 849); *Rodriguez*, 252 F. Supp. 2d at 336.

Here, the Appeals Council ultimately rejected Dr. Pitt's evidence, expressly finding that Dr. Pitt's evaluation did not relate to the applicable time period [TR 1-2]. The Appeals Council's finding in this regard is not accurate. While Dr. Pitt's psychological examination and report were admittedly made after the ALJ's hearing decision, Dr. Pitt reported that the mental limitations she found existed as early as September 27, 2009 – within the time period for which disability benefits were denied. *Id*. at 11. Thus, Dr. Pitt's opinions are "retrospective medical diagnoses [that] can be used to establish disability onset dates…" *Likes v. Callahan*, 112 F.3d 189, 191 (5th Cir. 1997); *see also McLendon v. Barnhart*, 184 F. App'x 432, 432 (5th Cir. 2006) (noting that retrospective opinions can prove a prior disability where opinion clearly refers to the

---

[7] Moreover (and although not required), no dispute that good cause for the failure to submit this evidence exists, since the evaluation had not yet been conducted at the time of the ALJ's decision.

relevant period of disability and not the current status); *Shields v. Commissioner*, No. 6:08-CV-00484-MHS-JKG, 2008 WL 8141300, at *9 (E.D. Tex. Dec. 16, 2008) (same); *Booker v. Astrue,* No. 3:10-CV-1940-P-BF, 2011 WL 4031096, at *7 (N.D. Tex. Aug. 15, 2011) ("Retrospective medical opinions are valid."); *Howeth v. Colvin*, No. 12-CV-0979-P, 2014 WL 696471, at *4 (N.D. Tex. Feb. 24, 2014) (same). The Commissioner argues that Dr. Pitt's evidence does not clearly refer to the relevant period of disability; however, such argument ignores that Dr. Pitt selected the checkbox for "yes" when asked in her Medical Source Statement whether she could reasonably infer that Plaintiff has had the same limitations since September 27, 2009, and did so after a thorough seventeen-page psychological examination based on her results and findings [Dkt. 14 at 8; TR 11 (referenced in paragraph (7), line 4)].

Moreover, on the one hand, a treating physician's (such as Dr. Pitt) opinion may be entitled to great weight, and precedent dictates that "an ALJ may reject the opinion of the treating physician only if the ALJ performs a detailed analysis of the treating physician's views" under the criteria set forth by the applicable regulations. *Newton*, 209 F.3d at 453 (citing 20 C.F.R. § 404.1527(d)(2)); *see also Walker v. Comm'r of Soc. Secc. Admin.*, No. 4:12-cv-324, 2014 WL 1267246, at *5-6 (E.D. Tex. Mar. 27, 2014) (remanding where ALJ rejected treating source opinion as immaterial, thereby failing to perform the analysis applicable to treating source opinions). On the other hand, by contrast, medical opinions expressed via "check-the-box" forms without additional explanation may be given less weight by the Commissioner in making its disability determinations. *Rollins v. Astrue*, 464 F. App'x 353, 357 n.5 (5th Cir. 2012) (noting that "check-the-box" forms without additional explanations might be given less weight, but reserving that determination for the ALJ); *Foster v. Astrue*, 410 F. App'x 831, 833 (5th Cir. 2011) (finding good cause to assign little weight to a treating physician's questionnaire opinion

"due to its brevity and conclusory nature, lack of explanatory notes, or supporting objective tests and examinations…"); *Nguyen v. Colvin*, No. 4:13-CV-2957, 2015 WL 222328, at *9 (S.D. Tex. Jan. 14, 2015) (finding a treating physician's unsupported, check-the-box questionnaire regarding disability typifies the "brief and conclusory" statements that an ALJ may disregard under the good cause exceptions to the treating physicians rule); *see also* 20 C.F.R. § 404.1527(d)(3) (providing that the ALJ can change the weight given to a medical opinion based on whether the opinion is well supported or conclusory). Such a determination regarding the weight to be given to Dr. Pitt's opinion is not for this Court to make, since the Court cannot weigh the evidence, try the issue de novo, or substitute its judgment on the ultimate issue of disability for that of the Commissioner. *Williams*, 2013 WL 1282517, at *4 (citing *Newton*, 209 F.3d at 452); *Walker*, 2014 WL 1267246, at *5-6. Accordingly, the Court finds that Dr. Pitt's evaluation, on its face, clearly relates to the time period for which disability benefits were denied, and it is the responsibility of the ALJ must determine how much weight should be given to such opinion.

Again, in addition to the time period, the Court must also consider whether Dr. Pitt's evidence would materially alter the outcome of this case. *Rodriguez*, 252 F. Supp. 2d at 336. After review, the Court finds Dr. Pitt's new evidence suggests greater psychological limitations than those included by the ALJ in his findings and conclusions regarding Plaintiff's residual functional capacity. The ALJ determined that Plaintiff's mental impairments justified limitations such as no complex instructions and only occasional contact with supervisors, co-workers, and the public [TR 45]. Dr. Pitt's psychological examination, however, reported marked limitations in understanding, remembering, and carrying out detailed instructions, and considered Plaintiff markedly limited in making judgments on simple work-related decisions. *Id.* at 9. Dr. Pitt

considered Plaintiff "highly distractible," found Plaintiff had a "difficult time staying on task," and reported Plaintiff extremely limited in completing a normal workday and workweek without interruptions from psychologically based symptoms. *Id*. at 10, 16. As such, Dr. Pitt's new evidence is inconsistent with the ALJ's residual functional capacity finding, and no reason was given as to the weight that was accorded to Dr. Pitt's evidence by the Appeals Council. *Id*. at 1-2. Again to reiterate, this Court cannot weigh the evidence, try the issue de novo, or substitute its judgment on the ultimate issue of disability for that of the Commissioner. *Williams*, 2013 WL 1282517, at *4 (citing *Newton*, 209 F.3d at 452). The vocational expert testified at the hearing before the ALJ that there was only one occupation available (surveillance system monitor) to the hypothetical individual with the described limitations due to the sit/stand limitation combined with the limitation of no more than occasional contact with the public, co-workers, and supervisors; and that, if the hypothetical individual had the additional physical limitations described by Plaintiff during the hearing, that hypothetical person would not be able to perform the job of surveillance system monitor. *Id*. at 73-74. Given the additional psychological limitations described by Dr. Pitt, Dr. Pitt's evidence could potentially alter the outcome of the disability determination, and Plaintiff's ability to perform as a surveillance system monitor.

Because the Court has determined that remand is appropriate based on the new evidence submitted to the Appeals Council consisting of Dr. Pitt's evaluation, the Court need not consider whether Dr. Milani's medical records also require remand. Notwithstanding, for purposes of completeness, the Court also considers the new evidence from Dr. Milani *infra*.

## III.     DR. MILANI

As previously stated, the new evidence that Plaintiff submitted to the Appeals Council includes medical records from Dr. Milani, Plaintiff's treating physician and orthopedic surgeon

[TR 517-583]. Dr. Milani's medical records are never expressly referenced by the Appeals Council. Rather, the Appeals Council, without referring to Dr. Milani, denied review, concluding in summary fashion that "this [new evidence] does not provide a basis for changing the [ALJ's] decision." *Id*. at 2. This Court has previously considered the Appeals Council's use of similar boilerplate language, and found therein that, where the new evidence submitted to the Appeals Council is "so inconsistent with the [underlying] disability determination [that] review [by the ALJ] was necessary to properly consider the evidence." *See Williams*, 2013 WL 1282517, at *3-4; *see also Goforth v. Commissioner*, No. 4:14-cv-181, 2015 WL 5190819, at *4 (E.D. Tex. Sept. 4, 2015) (applying *Williams* and finding that when the new evidence submitted to the Appeals Council is so inconsistent with the underlying disability determination that review by the ALJ is necessary to properly consider the evidence); *Standford v. Astrue*, No. 4:11-cv-106, 2013 U.S. Dist. LEXIS 26470, at *16-17 (E.D. Tex. Feb. 26, 2013) (remanding the case because a vocational expert report submitted to the Appeals Council contradicted prior vocational expert testimony); *but see Rudd*, No. 4:14-CV-104, Dkt. 17, at *14 (finding that when the new evidence submitted to the Appeals Council is not inconsistent with the underlying disability determination, that remand is not required).

Here, as in *Williams*, the boilerplate language used by the Appeals Council in denying Plaintiff's request for review does not show good reason for the determination of the weight given by the Appeals Council to Dr. Milani's report [TR 2]. In fact to reiterate, the Appeals Council failed to address Dr. Milani's report altogether. *Id*. However, unlike *Williams*, Dr. Milani's records are not facially inconsistent with the residual functional capacity finding and ultimate disability determination of the ALJ. *Rudd*, No. 4:14-CV-104, Dkt. 17, at *14 (citing *Nehlig*, 40 F. Supp. 2d at 849; *Ellis v. Commissioner*, No. 4:12-CV-455, 2014 WL

1234213, at *5 (E.D. Tex. Mar. 25, 2014)). Because Dr. Milani's records are not facially inconsistent, this Court must fully analyze whether Dr. Milani's new evidence justifies remand (*i.e.* whether it is "new" and "material").

As previously stated, in order for Dr. Milani's new evidence to justify remand, the evidence must be: (1) "new and not merely cumulative of what is already in the record"; and (2) "material." *Rodriguez*, 252 F. Supp. 2d at 336. Dr. Milani's medical records consist of treatment notes and other records not previously obtained by Plaintiff and not submitted to the ALJ for consideration. These records are certainly "new," in that they were not available for the ALJ to consider. Plaintiff attests that his former attorney (Mr. Popkess, who also represented Plaintiff at the hearing), made several unsuccessful attempts to obtain Dr. Milani's records, which were not received by Plaintiff's counsel until after the ALJ's decision [Dkt. 17 at 2]. Upon receipt, Mr. Popkess submitted Dr. Milani's records to the Appeals Council for consideration, and Plaintiff's current counsel (Mr. Coats) now moves for remand due to the Appeals Council's failure to consider such records. Dr. Milani's records provide further information regarding Plaintiff's medical and psychological treatment during the relevant time period, including additional psychological examinations performed, Plaintiff's continuing pain and physical therapy results, and other relevant records [TR 517-583]. Accordingly, the Court agrees that Dr. Milani's records are "new," since these records were not previously before the ALJ, and are not cumulative of what is already in the record.

Again, the materiality of new evidence involves a two-step analysis: (1) whether the evidence relates to the period for which disability benefits were denied; and (2) whether there is a reasonable probability that the new evidence would change the outcome of the case. *Rudd*, No.

4:14-CV-104, Dkt. 17, at *14 (citing *Nehlig*, 40 F. Supp. 2d at 849).[8]  It is undisputed that

Dr. Milani's medical records relate to the time period for which disability benefits were denied –

September 27, 2009, through November 20, 2012 [Dkt. 13 at 16; Dkt. 14 at 6].  The focus of the

Court, accordingly, is whether the newly submitted evidence materially changes the outcome of

the case.  Evidence submitted to the Appeals Council does not require remand simply because

the Appeals Council fails to sufficiently address the evidence in its decision.  *Ellis*, 2014 WL

1234213, at *5 (citing *McGee v. Astrue*, No. 08-0831, 2009 WL 2841113, at *6 (W.D. La. Aug.

28, 2009)).  Plaintiff contends that Dr. Milani's records show his mental impairments to be more

limiting than what the ALJ found [Dkt. 13 at 19-20].  The ALJ found Plaintiff's mental

depression, anxiety, and personality disorder to be severe, and further found Plaintiff's

limitations required Plaintiff's residual functional capacity to be restricted to no complex

instructions and only occasional contact with supervisors, co-workers, and the public [TR 45].

Generally, the evidence from Dr. Milani, contains psychological testing from various medical

providers, which also indicate Plaintiff's severe and/or "significant" depression and anxiety.  *Id.*

at 538, 569-70, 572.  However, Dr. Milani's records are further tempered by evidence of the non-

severity of Plaintiff's psychological impairments.  For example, Plaintiff denied psychiatric

symptoms in October of 2011, and further examination revealed Plaintiff was fully oriented, with

normal mood, affect, speech, attention, and concentration.  *Id.* at 529.  In February of 2012,

---

[8] Plaintiff also argues that the issue of "materiality" is not before the Court because the Appeals Council admitted the new evidence, thereby conceding its relevance to the ALJ's decision [Dkt. 17 at 3 (citing *Williams*, 2013 WL 1282517, at *3)].  While this argument has been made in multiple filings now before the Court, after full review of the argument presented and the relevant case law, the Court does not agree that *Williams* dispenses with the materiality test.  In *Williams*, the Court found that the Appeals Council accepted new evidence into the record without conducting the required analysis, which in turn, required the Court to consider the evidence as part of the record on appeal to determine if the ALJ's decision was supported by substantial evidence.  *Williams*, 2013 WL 1282517, at *3.  However, the Court continued to conduct the full "materiality" analysis in its opinion (to the extent the Parties had not already agreed on some portions of the evidence).  *Id.*  Thus, *Williams* does not stand for the proposition that because the evidence is accepted into the record by the Appeals Council, then the Court need not conduct any analysis on this prong or step.  Accordingly, the Court conducts such analysis herein.

Plaintiff complained of symptoms of depression; however, his mental status examination revealed he was alert and oriented, with appropriate affect, unremarkable speech, normal thoughts, intact memory and concentration, and good insight and judgment. *Id*. at 538. A psychological assessment on the same day shows that Plaintiff's symptoms of depression had decreased from severe to moderate, his symptoms of anxiety had decreased from severe to mild, and he demonstrated increased psychological and social functioning. *Id*. at 541. Also, in July of 2012, Tom G. Mayer, M.D., indicated concerns with Plaintiff's manipulative behavior in trying to change his pain medication, and acknowledged that Plaintiff was "perfectly capable of working at the limitations provided at his discharge. *Id*. at 559-60. At the end of July 2012, Plaintiff complained of significant mental symptoms, but his mental status examination shows he was fully oriented, he had normal psychomotor activity, speech, and intellectual functioning, and intact memory and goal-directed thought processes. *Id*. at 573.

Dr. Milani's records demonstrate that Plaintiff's depression, anxiety, and personality disorder are (and were at the relevant time), in fact, severe; a fact which was acknowledged by the ALJ [TR 44-49]. However, Plaintiff has not demonstrated that such records would materially change the outcome of the case. *Ripley v. Chater*, 67 F.3d 552, 555 (5th Cir. 1995). The ALJ found that, based on the severity of Plaintiff's psychological impairments, Plaintiff should be limited to no complex instructions and only occasional contact with supervisors, co-workers, and the public [TR 45]. The ALJ based his determination on the medical evidence of record, including a mental status examination from Dr. Ronald W. Anderson, Ph.D., who diagnosed Plaintiff with depressive disorder, and found Plaintiff had limitations in social functioning, but had good memory, judgment, concentration, and insight. *Id*. at 45, 311. The ALJ further considered a psychiatric review from Leela Reddy, M.D., finding Plaintiff's psychological

impairments non-severe. *Id*. at 45, 314. The ALJ concluded that while Plaintiff's medically determinable impairments could reasonably be expected to produce some symptoms, there is no evidence of treatment by a mental health professional for Plaintiff's depression, anxiety, and personality disorder; and accordingly, the ALJ limited Plaintiff to the aforementioned limitations. *Id*. at 48. The new evidence submitted by Dr. Milani would not materially alter this outcome, since Dr. Milani's evidence does not suggest that Plaintiff's severe impairments require any more and/or less severe limitations than those previously found by the ALJ. Unlike Dr. Pitt's psychological evaluation (which demonstrated that, if given controlling weight by the ALJ, Plaintiff's psychological limitations would be substantially more significant), Dr. Milani's evidence demonstrates that Plaintiff's depression, anxiety, and personality disorder are severe, but are reasonably addressed by the limitations already included in the residual functional capacity finding of the ALJ. Accordingly, the Court finds Dr. Milani's new medical records do not justify remand.

## CONCLUSION

Based on the foregoing, the Court finds this case should be remanded for further review so that the Commissioner may evaluate and weigh the new medical evidence submitted by Plaintiff, specifically the medical records of Dr. Pitt, in its disability determination.

It is therefore **ORDERED** that the decision of the Commissioner is hereby **REMANDED** for further proceedings consistent with this opinion.

**SIGNED this 26th day of January, 2016.**

_____
Christine A. Nowak
UNITED STATES MAGISTRATE JUDGE